UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
REGINALD DENIS,

                     Plaintiff(s),

     -against.-

HOME DEPOT,

                     Defendant(s).
-------------------------------------------------------------------X

**PLAINTIFF REGINALD DENIS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Civ. No. 2:10-cv-03227
(ADS)(WDW)

**LAW OFFICES OF REGINA L. DARBY**
**111 John Street, Suite 800**
**New York, New York 10038**
**(212) 480-3236**

# TABLE OF CONTENTS

STATEMENT OF FACTS .................................................................................................................2

CHOICE OF LAW ..........................................................................................................................5

LEGAL STANDARD.......................................................................................................................6

ARGUMENT...................................................................................................................................7

POINT I: LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED IN THE
INTEREST OF JUSTICE ...................................................................................................................7

POINT II: THE AMENDMENT SOUGHT IS NOT FUTILE..................................................11

    A. PLAINTIFF'S PROPOSED AMENDMENT IMPLICATES THE SAME FACTS AS
    THOSE THAT FORM THE PREDICATE OF THE ORIGINAL COMPLAINT .......13

    B. DEFENDANT'S ACTS WERE COMMITTED RECKLESSLY, WANTONLY
    AND/OR WITH GROSS DISREGARD OF THE RIGHTS OF PLAINTIFF...........14

    C. DEFENDANT'S ASSET PROTECTION MANAGER, HAU TRAN, WAS
    MANAGERIAL PERSONNEL WITH AUTHORITY TO MAKE A DECISION FOR
    THE CORPORATION THAT WOULD HAVE PREVENTED THE DAMAGE ......21

POINT III: THE AMENDMENT WILL NOT CAUSE UNDUE DELAY OR PREJUDICE
AND WAS NOT MADE IN BAD FAITH ...................................................................22

POINT IV: PLAINTIFF HAS GOOD CAUSE FOR LEAVE TO AMEND THE
COMPLAINT.................................................................................................................................23

CONCLUSION...............................................................................................................................25

## STATEMENT OF FACTS

The relevant facts are set forth in the Darby Declaration and are summarized below.

### *Background*

On February 13, 2009, the plaintiff Reginald Denis ("plaintiff" or "Denis") was detained by security and later arrested by police outside of the Home Depot store located at 43 Hutton Avenue, Nanuet, New York 10954, after making a valid purchase. At the time of his arrest, the plaintiff informed Home Depot security that he was not involved in any theft. The plaintiff was charged with attempted grand larceny in the third degree, attempted criminal possession of stolen property in the third degree and conspiracy in the fifth degree. Following his arrest, the plaintiff was imprisoned at the Clarkstown Police Department for a period of five days. He was released on his own recognizance by the Town Court Judge on or about February 18, 2009. Thereafter, the plaintiff was found to have violated his probation on the grounds that he failed to lead a law-abiding life by being arrested and charged with three crimes, that he failed to promptly notify his probation officer of same and that he left New York City without receiving permission to do so by the Court or his probation officer. As a result of his alleged probation violation, the plaintiff was sentenced to prison and incarcerated from October 27, 2009 until June 19, 2010 at Riker's Island Correctional Facility. On December 23, 2009, the charges of the petit larceny, criminal possession of stolen property in the fifth degree and conspiracy in the fifth degree against plaintiff were dismissed after a video was provided to the Assistant District Attorney handling this case which confirmed the plaintiff's version of his claim; to wit, that the plaintiff was not involved in the attempted theft at Home Depot.

### *Procedural History*

This action was commenced on April 12, 2010, by the filing of a Summons and Verified

2

Complaint in the Supreme Court of New York, Kings County by the plaintiff's initial attorney Michael Ridge, Esq. Therein, plaintiff asserted claims that included defamation, false imprisonment, malicious prosecution, negligence, and assault and battery against the defendant Home Depot. On July 14, 2010, prior to serving its answer, defendant removed the action to the United States District Court, Eastern District of New York pursuant to 28 U.S.C. §§ 1332 and 1446, et seq. and on August 11, 2010, the defendant served its Verified Answer. Subsequently, my office was retained to represent plaintiff in or around August of 2011. On April 15, 2014, the parties entered into a stipulation and order whereby plaintiff agreed to discontinue its causes of action for defamation, assault and battery as against defendant.

### *Discovery History*

The discovery deadline was extended seven times, delaying this action for over two years. The defendant's repeated failure to timely and adequately respond to plaintiff's interrogatories and produce documents is the reason that plaintiff's motion for leave to amend the complaint was not made earlier. On February 12, 2013, the parties filed a motion and cross-motion to strike the adversary's pleading for failure to comply with court ordered discovery. On July 16, 2013 Judge Wall issued an order denying plaintiff's motion to strike defendant's answer and defendant's cross-motion to strike plaintiff's complaint, deeming defendant's untimely objections to plaintiff's request for interrogatories waived (see footnote in said order) and granting the parties motions to extend its time to complete discovery to October 15, 2013 and a pre-trial conference was scheduled for October 24, 2013. The plaintiff was deposed on September 19, 2013. Defendant's witness, James Mandato, was deposed on October 4, 2013. As plaintiff had not received defendant's response to its interrogatories by the October 15, 2013 discovery deadline, plaintiff wrote the Court to request clarification of the footnote contained in

3

its July 16, 2013 Order. Non-party witness, former Home Depot asset protection manager, Hau Tran, was deposed on October 18, 2013. On October 22, 2014, Judge Wall adjourned the October 24, 2013 conference to November 21, 2013 in light of outstanding discovery issues and on October 23, 2013 ordered that defendant was to serve revised interrogatory responses no later than October 29, 2013. Thereafter, defendant requested two more extensions of the discovery deadline. On October 29, 2013, defendant sought an extension of the October 29, 2013 deadline to serve its revised interrogatory responses. On October 30, 2013, Judge Wall ordered that defendant's deadline to serve revised interrogatory responses was extended to November 11, 2013. On November 11, 2013, defendant requested another extension of the discovery deadline. By Order, dated November 12, 2013, Magistrate Judge Wall extended defendant's time to respond to plaintiff's interrogatories to November 25, 2013. On November 25, 2013 defendant served its revised response to interrogatories and its responses to plaintiff's post-deposition demands for discovery and inspection dated October 16, 2013 and October 30, 2013. However, there were several deficiencies with defendant's discovery responses. After a thorough review of the documents produced, on December 4, 2013, plaintiff sent defendant a good faith letter regarding the deficiencies. Some of the documents defendant listed in its interrogatory response were not provided and/or were policies that were not in effect on the date of the incident, February 13, 2009. On December 5, 2013, plaintiff sent defendant another good faith letter regarding its discovery responses, specifically interrogatory responses seven through twelve which were unresponsive, that some of the modules that were disclosed without the corresponding written materials, and that some of the written training materials and policies that were disclosed reference other documents that were not provided to Plaintiff. The parties executed and filed a joint pre-trial order on December 6, 2013. A pre-trial conference was held

4

on December 9, 2013. At that conference my associate, Jaclyn L. Dar Conte ("Ms. Dar Conte") addressed the deficiencies in defendant's November 25, 2013 discovery responses and reserved the right to amend the joint pre-trial order once the correct documents were disclosed. The November 25, 2013 deadline for completion of all fact discovery and depositions passed and defendant still owed discovery. On March 3, 2014, plaintiff sent another good faith letter to the defendant regarding outstanding discovery. It was not until April 1, 2014, more than four months after the discovery deadline, that defendant produced a supplemental response to plaintiff's interrogatory demands and post-deposition demands for discovery and inspection dated October 16, 2013 and October 30, 2013, with hundreds of pages of additional documents, to cure the deficiencies in its November 25, 2013 responses. On April 9, 2014, the parties appeared for a conference with the Honorable Judge Spatt and the matter was set down for trial on July 7, 2014.

### Plaintiff's Good Faith Attempt To Obtain Consent to Amend the Complaint

As detailed in the Darby Declaration, pursuant to Fed. R. Civ. P. 15 (a)(2), Ms. Dar Conte communicated with defendant's counsel (hereinafter "Mr. Comer") in an effort to procure defendant's consent for plaintiff to amend its complaint to avoid the instant motion. Defendant's counsel responded via email dated May 13, 2014, in which Mr. Comer avers that the deposition testimony and facts of the case do not justify a punitive damages claim and that defendant will not stipulate to plaintiff amending his complaint. As such, the instant motion became necessary.

### CHOICE OF LAW

This matter shall be interpreted and controlled pursuant to the substantive laws of the state of New York.

## LEGAL STANDARD

A motion to amend a pleading is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that the Court "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2); *see also* Onieda Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds,* 544 U.S. 197 (2005); Memorial Hermann Healthcare System, et al. v. State Street Bank and trust Co., 2010 WL 3664490, at *1 (S.D.N.Y. Sept. 17, 2010) (granting plaintiffs' motion for leave to amend its complaint). In Foman v. Davis, 371 U.S. 178, 182 (1962), the United States Supreme Court emphasized that leave to amend should normally be permitted. The Second Circuit follows the standard that a motion to amend a pleading should be denied only for undue delay, bad faith, futility of the amendment, or prejudice to the opposing party. *See* Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Richardson Greensheilds Sec., Inc. v. Lau, 825 F.2d 647, 653 (2d Cir. 1987); State Teachers Ret. Bd. V. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Assocs., 988 F.2d at 350, *quoting,* Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir.1983)); McGee v. Dunn, 940 F. Supp. 2d 93, 110 (S.D.N.Y. 2013). However, mere delay without a showing of bad faith or prejudice does not provide a basis to deny a motion to amend. *See* Block v. First Blood Assocs., 988 F.2d at 350, *quoting* State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d at 865. This Court has noted, "'it is *rare* that such leave should be denied,…especially where there has been no prior amendment.'" Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 2005 WL 1324806, at *3 (S.D.N.Y. June 6, 2005), *quoting* Ricciuti v. N.Y.C.T.A., 941 F.2d 119, 123 (2d Cir. 1991).(emphasis added).

6

## ARGUMENT

### POINT I:  LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED IN THE INTEREST OF JUSTICE

Liberal leave to add a newly discovered claim furthers the interests of justice because the amendment protects against "harsh application of technical rules" that might otherwise bar such claims based on newly discovered evidence and "encourages claims to be decided on their merits." Colorado Capital v. Owens, 227 F.R.D. 181, 193 (E.D.N.Y. 2005)(permitting amendment of complaint because "the interests of justice would be frustrated if it impaired pro se plaintiff's claim by the harsh application of technical rules.")(citations omitted); Scott v. Merrill Lynch Pierce, Fenner & Smith, 1990 WL 209436, at *2-3 (S.D.N.Y. Dec. 10, 1990)("In the interests of justice, leave to amend a compliant is freely given if the plaintiff has at least colorable grounds for relief"). Leave to amend is appropriate and is in the interests of justice where, as here, "there have been numerous factual developments since the complaint" was filed. Morrone v. CSC Holdings Corp., 404 F.Supp.2d 450, 455 (E.D.N.Y. 2005)(amendment granted, deemed not futile and Court noted that "the inclusion of factual assertions and legally cognizable claims in an amended complaint may assist in a resolution of this case."); Friedl v. City of New York, 210 F.3d 79, 88 (2d Cir. 2000)(amendment permitted after discovery reveals additional facts to support claim under 42 U.S.C. § 1983); Bridgeport Music Inc. v. Universal Music Group, Inc., 248 F.R.D. 408, 414 (S.D.N.Y. 2008)(federal courts consistently grant motions to amend where new facts and allegations are developed during discovery).

The interests of justice will be served by granting Denis leave to amend his complaint. While on probation for driving while intoxicated (New York Vehicle and Traffic Law §1192(3)), Denis was falsely arrested on February 13, 2009 at Home Depot in Nanuet, New York, for attempted larceny. He was misidentified by defendant Home Depot's employee, Asset Protection

Manager Hau Tran ("Tran"), as a suspect in an attempted theft. Tran testified that he observed Denis from a different aisle within the store, fifteen feet away, put items into a white Glacier Bay vanity cabinet box along with other customers, who Denis allegedly conversed with. See Exhibits "Q" at pg. 49, 54-55, 68. However, Denis did not participate in "box stuffing" and did not speak with any individuals while in the Home Depot. See Exhibit "N" at pg. 26-27, 39. Throughout his entire shopping experience at the Nanuet Home Depot, Denis never possessed any white Glacier Bay vanity cabinet box. See Exhibit "N" at pg. 26. Moreover, Denis approached the cashier and paid for all the items that he had in his possession, which he purchased for his construction job, received a receipt for said items and left the store with only those items that he purchased in a Home Depot plastic bag. See Exhibit "N" at pg. 18, 20, 22, 24 and Exhibit "Q" at pg. 70-71. Upon exiting the store, Denis was met by police officers and identified by Tran as a participant in the attempted larceny. See Exhibit "N" at pg. 24-25. Denis produced his receipt after being stopped and the police officer took the receipt into the Home Depot. See Exhibit "N" at pg. 81-82. Denis was arrested and brought to the Clarkstown Police Department. See Exhibit "N" at pg. 28. He was later arraigned on charges of attempted grand larceny in the third degree (NY Penal Law §110/155.35), attempted criminal possession of stolen property in the third degree (NY Penal Law § 110/165.50) and conspiracy in the fifth degree (NY Penal Law §105.05(1)). See Exhibit "B". Thereafter, Denis notified his probation officer of this arrest and was then found to have violated the terms of his probation. See Exhibit "N" at pg. 65-67 and Exhibit "C". As a result of this violation, Denis was sentenced to eight months in jail at Riker's Island. See Exhibit "N" at pg. 67-68.  Shortly after receiving this sentence, the criminal charges for the February 13, 2009 arrest were dismissed on December 23, 2009. See Exhibit "D". Denis served eight months in prison and was released in or around June 2010. See

Exhibit "N" at pg. 68.

Plaintiff submits that but for Denis' false arrest at the Nanuet Home Depot on February 13, 2009, Denis would not have been found to have violated his probation and would not have been sentenced to eight months in prison at Riker's Island.

The interests of justice will be served by granting Denis leave to amend his complaint to add punitive damages.

> Punitive damages are allowable in personal injury actions based upon negligence, if such negligence amounts to flagrant misconduct.... Malice, a prerequisite to the allowance of punitive damages, may be established by showing that the acts committed by the defendant were committed recklessly, wantonly, or without regard to the rights of plaintiff or of people in general.

Doe v. Columbia University in City of New York, et al., 165 F.R.D. 394 (S.D.N.Y. 1996), *citing*, Hall v. Consolidated Edison, 104 Misc.2d 565, 571 (Sup. Ct., Kings County 1980).

New York Penal Law §110.00, which defines what constitutes an attempted crime, requires a showing that an individual "committed an act or acts that carried the project forward within dangerous proximity to the criminal end to be attained." People v. Warren, 66 N.Y.2d 831, 832 (1985); see also, People v. Bracey, 41 N.Y.2d 296, 300 (1977); People v. Fair, 269 A.D.2d 91, 94 (3rd Dept. 2000), *leave denied*, 95 N.Y.2d 963 (2000); In re Phoenix G., 265 A.D.2d 554, 555 (2d Dept. 1999). "The question of whether an attempt to commit a crime has been made, is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design." People v. Collins, 234 N.Y. 355, 359 (1922), *citing* People v. Moran, 123 N.Y. 254, 257 (1890).

> Felonious intent alone is not enough, but there must be an overt act shown in order to establish even an attempt. ***An overt act is one done to carry out the intention, and it must be such as would naturally effect that result, unless prevented by some extraneous cause.***

9

People v. Collins, 234 N.Y. at 360 (emphasis added).

Under New York law, an individual must perform conduct quite severe in order to have committed the crime of attempt. Here, there is no evidence that Denis ever performed an overt act to have committed attempt. This is made clear by the Rockland County District Attorney's dismissal of the charges against Denis. See Exhibit "D". More importantly, Home Depot Asset Protection Manager Tran testified at his deposition that Denis never took any items outside of the store that were not paid for and that he did not observe Denis having any of the items that he claimed Denis previously put in the box when Denis left the store. See Exhibit "Q" at pg.70, 74-76. In addition, Tran testified that a male standing closest to Denis had a bathroom vanity cabinet on a flatbed; that when all the males, which allegedly included Denis, left the lumbar aisle, Tran did not follow Denis but rather followed the man with the vanity cabinet to the register, where that man paid for the cabinet but left same in the store. See Exhibit "Q" at pg. 57-58. Tran further testified that he did not observe Denis attempt to take the vanity cabinet outside of the store; did not observe Denis in the vicinity of where the cabinet was left; did not observe Denis involved in sealing up the vanity cabinet and that the vanity cabinet was never taken outside of the store. See Exhibit "Q" at pg. 68-69, 79. Tran also testified that he was responsible for reviewing the closed circuit television surveillance tape ("CCTV") and that the CCTV video did not show Denis steal any merchandise from the store. See Exhibit "Q" at pg. 25, 74-76, 81.

Based upon the law and the foregoing evidence, the false arrest of Denis was accomplished with such gross disregard of his rights as to constitute gross and malicious conduct. Clearly, there is no evidence to support defendant's position that Denis was involved in any attempted theft. Moreover, the defendant, HOME DEPOT, its employees, agents, servants and/or mangers and/or security guards, acting within the scope and authority of their

10

employment, carelessly, recklessly, maliciously and negligently caused, permitted, allowed, created and instigated the prosecution, and continuing prosecution, of the plaintiff with deliberate indifference where Denis made a valid purchase and had produced his receipt. While a short detainment to confirm Tran's suspicions via CCTV video may have been warranted, once the CCTV video showed Denis (1) made a purchase of his items at the register, (2) only left the store with the items that he paid for, and (3) did not remove any items from the cabinet, there was no probable cause to justify Denis' arrest which resulted in his violation of probation and subsequent eight month incarceration. See Exhibit "Q" at pg 75-76.

Punitive damages is warranted under the facts and circumstance of this case because defendant, HOME DEPOT, its employees, agents, servants and/or mangers and/or security guards, knew that the Plaintiff had not broken any laws, yet they, with shared intent and malice aforethought, arbitrarily and capriciously violated and terrorized plaintiff Denis under color of law by initiating his false arrest and subsequent malicious prosecution, which resulted in a violation of probation and eight month incarceration before the criminal charges were dismissed. As such, defendant's gross negligence, false arrest and malicious prosecution of plaintiff amounts to negligent, reckless, wanton and gross disregard of Denis' rights and constitute gross and malicious conduct that warrants an award of punitive damages.

## POINT II: THE AMENDMENT SOUGHT IS NOT FUTILE

Leave to amend a pleading may be denied when the amendment fails to present "colorable grounds for relief." S.S. Silberblatt, Inc. v. East Harlem Pilot Bldg. 1 Hous. Dev. Fund Co., Inc., 608 F.2d 28, 42 (2d Cir. 1979). This issue arises when a defendant objects to a proposed amendment on the ground that it fails to state a cognizable claim. See Ryder Energy Distribution v. Merrill Lynch Commodities, 748 F.2d 774, 783 (2d Cir. 1984); S.S. Silberblatt,

11

Inc. East Harlem Pilot Bldg. 1 Hous. Dev. Fund Co., Inc., 608 F.2d at 42. The inquiry to determine whether an amendment presents colorable grounds for relief is comparable to the analysis required by a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Benfield v. Mocatta Metals Corp., 1992 WL 177154 at *1 (S.D.N.Y. July 13, 1992)("If a proposed amendment would be insufficient to withstand a motion to dismiss, it is futile and leave to amend should be denied"). The standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is narrow.

> A court must accept plaintiff's allegations at face value, …
> must construe the allegations in the complaint in plaintiff's
> favor, … and must dismiss the complaint only if it appears
> beyond a doubt that the plaintiff can prove no set of facts in
> support of this claim which would entitle him to relief.

Rapf v. Suffolk County of New York, 755 F.2d 282, 290 (2d Cir.1985)(internal citations omitted). "It follows, then, that denial of a motion to amend based upon the asserted inadequacy of the proposed pleading is also sparingly invoked." Bankers Trust Co. v. Weinick, Sanders & Co., 1993 WL 478124 at *4 (S.D.N.Y. November 12, 1993); accord, Square D Co. v. Niagara Frontier Tariff Bureau, Inc. 760 F.2d 1347, 1366 (2d cir.1985), aff'd, 476 U.S. 409 (1986).

The issue, therefore, is whether plaintiff's proposed amended complaint states sufficient facts to support punitive damages under New York law. Under New York law,

> Punitive or exemplary damages have been allowed in cases where
> the wrong complained of is morally culpable, or is actuated by evil
> and reprehensible motives, not only to punish the defendant but to
> deter him, as well as others, who might otherwise be so promoted,
> from indulging in similar conduct in the future…. It is not the
> form of the action that gives the right to the jury to give punitory
> damages, but the moral culpability of the defendant.

Walker v. Sheldon, 10 N.Y.2d 401, 404-405 (1961); see also, Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 203-04 (1990).

Punitive damages are allowed in personal injury actions based upon negligence, if such negligence amounts to flagrant misconduct. See, Soucy v. Greyhound Corp., 27 A.D.2d 112 (3rd Dept. 1967). Malice, a prerequisite to the allowance of punitive damages, may be established by a showing that the acts committed by the defendant were committed recklessly, wantonly, or without regard to the rights of plaintiff or of people in general. Soucy, *supra*, citing Magagnos v. Brooklyn heights R.R. Co., 128 A.D. 182 (2d Dept. 1908); 14 New York Jurisprudence, "Damages" Section 179.

Where, as here, the defendant is a corporation, the question is whether the act or ratification is done by a person of such responsibility as to arouse the "institutional conscience." The test to determine if there is evidentiary support for the award of punitive damages is "… whether the continuing tortious conduct has been brought home to the consciousness of relatively important managerial personnel with authority to make a decision for the corporation that would have prevented the damage." Doralee Estates, Inc. v. Cities Service Oil Co., 569 F.2d 716, 722 (2d Cir. 1977). To hold that punitive damages may not be imposed unless there is participation in the tortfeasing decision by the highest corporate executives is unrealistic given the size of giant corporations like defendant whose operations are nationwide. Id., *citing*, General Motors Acceptance Corp. v. Forelich, 273 F.2d 92, 94 (U.S. App.D.C. 1959).

## A. PLAINTIFF'S PROPOSED AMENDMENT IMPLICATES THE SAME FACTS AS THOSE THAT FORM THE PREDICATE OF THE ORIGINAL COMPLAINT

An amendment to the complaint may be permitted to add a demand for punitive damages where such claim does not constitute an independent cause of action and instead implicates the same factual circumstances as those that formed the predicate of the original complaint. See, Pellegrini v. Richmond Co. Ambulance Service, Inc., 48 A.D.3d 436 (2d Dept. 2008); Pchelka v. Loomis-Root, Inc., 210 A.D.2d 889, 889 (4th Dept. 1994).

Plaintiff's proposed amendment to his complaint, to add punitive damages, is based on the same facts as those that formed the predicate of the original complaint. See Exhibit "H".

## B. DEFENDANT'S ACTS WERE COMMITTED RECKLESSLY, WANTONLY AND/OR WITH GROSS DISREGARD OF THE RIGHTS OF PLAINTIFF

The evidence shows that plaintiff was not involved in the attempted theft at Home Depot on February 13, 2009 and that the defendant's acts were reckless, wanton and/or committed with gross disregard of the rights of plaintiff. In fact, plaintiff testified that he did not put any merchandise inside of a box; that he went to the register and paid for the items that he picked up while shopping in the store; that he received a receipt for his purchase; that after receiving his receipt he walked out of the store and was stopped by police; that a manager identified him as a suspect; that he never had a white Glacier Bay vanity box while shopping at the store; that he was arrested for shoplifting and was transported to the police precinct; that he did not know Herbert Hall; that he was not aware whether Hall had a white Glacier Bay vanity box; that he does not know if Hall had any box when he was shopping at the store; that he did not have any interaction with Hall while inside the store; that he did not speak with any individuals while in the store; that he produced his receipt after being stopped and the police officer took his receipt into the store; that he believes he was racially discriminated against by Home Depot because he did not fit the description of the suspect that came over the radio when he was sitting in the police car and believes that Home Depot employees picked out the next black person they could find; that there was another Home Depot employee, a tall, slim man with dark skin, who contradicted the store manager's identification and pointed to Denis and said in front of police and the store manager "that is not him"; that the police officer was standing next to him, within a one foot distance, when the Home Depot employee contradicted the store manager and said "that is not him", so it is fair to say that the officer also heard this statement. See Exhibit "N" at pg.

19, 22, 24-28, 36-37, 39, 77-78, 81-82, 88-89, 93.

Plaintiff further testified that he was violated on probation the same day that he told his probation officer about his arrest; that he was subsequently incarcerated for said violation for a period of eight months; that the arrest on February 13, 2009 was the first time that he violated his probation. See Exhibit "N" at pg. 67-68, 90.

Non-party witness, former Home Depot Asset Protection Manager Tran, who allegedly observed and apprehended Denis on February 13, 2009, testified that he first observed Denis from an adjacent aisle, a different aisle than where Denis was standing; that he observed Denis from fifteen away; that the male standing closest to Denis had a bathroom vanity cabinet on a flatbed; that when Denis left the lumber aisle that Tran did not follow him and instead followed the man with the vanity cabinet; and that he called the police when Denis and the other males were in the lumber aisle. See Exhibit "Q" at pg. 49, 57-58, 61, 65, 68. Tran further testified that he knew that Denis was arrested by the police; that the vanity cabinet was never taken outside of the store; that he did not observe Denis attempt to take the vanity cabinet outside of the store; that he did not observe Denis in the vicinity of where the cabinet was left; that he did not observe Denis having any of the items that he claims Denis previously put in the box when Denis left the store. See Exhibit "Q" at pg. 65, 68-70.

In addition, Tran testified that he was not required to get the approval of manager Jeff Bloom before calling the police; that he and his managers were responsible for reviewing surveillance tapes; that part of his training was to confirm his suspicious with regard to whether someone stole something including whether person had proof of payment; that he came to know that Denis approached the register from the surveillance tapes; that the surveillance video showed Denis making a purchase of his items at the register; that the video did not show that

15

Denis left the store with anything that did not belong to him; that the video showed that Denis only left the store with the items that he paid for at the cashier; that the video confirmed that Denis did not remove any items from the vanity cabinet box; that he did not observe Denis involved in sealing up the vanity cabinet; that if an item is left in the store, it is not considered larceny; that stealing was taking merchandise outside of the store; that if merchandise is not taken outside of the store, it was not stealing; that *he never observed Denis take any merchandise outside of the store and that review of the surveillance tapes confirmed that Denis did not take anything outside of the store*. See Exhibit "Q" at pg. 23, 44-45, 66, 72-76, 79-81 (emphasis added).

The standard operating procedures pertaining to security for Home Depot loss prevention/risk management, which was disclosed by defendant on April 1, 2014, indicates that CCTV footage is used by loss prevention/asset protection in any internal investigation of suspected criminal activity committed on company property and investigation by law enforcement. See Exhibit "X" at SAF 09-10 Security pg 15. It also states that only an authorized user may access the CCTV system and download video from the system and lists authorized users to include the following: (1) regional vice presidents; (2) loss prevention/asset protection associates; and (3) corporate security investigators. See Exhibit "X" at pg. SAF 09-10 Security pg 15. Based upon Tran's testimony and defendant's April 1, 2014 disclosures, Tran was authorized to contact the police and was an authorized user permitted to access the CCTV to download and view the video in his internal investigation of the subject incident as well as disclose same to law enforcement. See Exhibit "Q" at pg. 25, 44-45; Exhibit "X" at pg. SAF 09-10 Security pg 15. Moreover, Tran testified that it was part of his training to confirm his suspicions with regard to whether someone stole something. See Exhibit "Q" at pg. 72-73. In

fact, Tran could not confirm his suspicions that Denis was involved in attempting to steal merchandise because he testified that he reviewed the CCTV video footage which did not show Denis steal any merchandise from the store. See Exhibit "Q" at pg. 74-76, 81.

Moreover, Tran did not comply with the case document procedures as outlined in the materials for training no. 3107, Processing Shoplifting Subjects. See Exhibit "X". According to those training materials, an apprehension report should be completed prior to the end of the employees shift on the day that the apprehension is made. See Exhibit "X". However, Tran did not complete the apprehension report until approximately twenty hours later. See Exhibit "A".

Furthermore, Tran did not comply with the Home Depot's Asset Protection External Policy, Section 2 pertaining to shoplifting apprehension requirements. See Exhibit "X". According to these requirements, Tran was to maintain continuous observation of the subject and observe the subject pass all points of sale without paying for the merchandise. See Exhibit "X". In fact, Tran testified that he did not maintain continuous observation of plaintiff Denis and that he did not observe Denis pass all points of sale without paying for merchandise prior to making an apprehension. See Exhibit "Q" at pg. 57, 70, 75-76.

Tran also failed to comply with the Home Depot external policy, Section 3 pertaining to point of sale related apprehensions, which includes container stuffing, which defendant alleges plaintiff participated in and was the basis upon which plaintiff was apprehended, falsely arrested and maliciously prosecuted. See Exhibit "X". Home Depot's asset protection external policy concerning point of sale related apprehensions, specifically container and package stuffing, makes clear that "'stuffed product" means the Home Depot ("THD") merchandise the subject conceals in another container/package and for which no payment is made." See Exhibit "X". The evidence makes it clear that plaintiff paid for all the items that he left the store with, that he never

attempted to remove a white Glacier Bay vanity cabinet box, allegedly stuffed with other merchandise, from the Home Depot store, and that he never possessed said vanity box while shopping in the store on February 13, 2009. See Exhibit "N" at pg. 26-27; Exhibit "Q" at pg. 68-69, 75-76, 81. Moreover, the policy concerning apprehensions for container and package stuffing goes on to state that a subject may be apprehended for container and package stuffing if the asset protection employee completed the steps set forth in section 2, shoplifting apprehension, which Tran did not complete because he failed to maintain continuous observation of Denis and failed to observe Denis pass all points of sale without paying for the merchandise. See Exhibit "Q" at pg. 57, 66, 70, 75-76; Exhibit "X". In fact, Tran testified that the man who he followed with the vanity cabinet box went to the self-checkout register and paid for the vanity cabinet but left it inside the store. See Exhibit "Q" at pg. 58-59. Thus, no merchandise that was allegedly concealed or stuffed inside the vanity cabinet box, and was not paid for, ever left the store.

Importantly, Home Depot Asset Protection External Policy, Section 4 pertaining to approaching a suspect clearly states that "[i]f Asset Protection has not observed all of the elements set forth in Section 2, Asset Protection is not permitted to conduct a receipt check or direct another associate to conduct a receipt check." See Exhibit "X". Here, by his own testimony Tran failed to observe all of the elements set forth in Section 2. See Exhibit "Q" at pg. 58, 66. As such, Denis should not have even been subjected to a receipt check.

In addition, Home Depot Asset Protection External Policy, Section 6 pertaining to Non-Recovery Incidents ("NRI") defines NRI as "...an incident in which Asset Protection detains a customer and it is determined that the customer is not in possession of stolen THD merchandise" and requires that asset protection associate responsible for the NRI apologize to the customer for the inconvenience and tell the customer he is free to leave and that a customer should not be

detained once it is determined an incident is an NRI. See Exhibit "X". Plaintiff testified that he received a receipt for the items that he possessed, that he walked out of the store after receiving said receipt and was stopped by police, that he was asked to produce his receipt after being stopped, that he produced his receipt, that the officer took the receipt into the store and that a Home Depot employee contradicted the store manager who identified him as a suspect by pointing to him and saying "that is not him" in front of the police and the store manager. See Exhibit "N" at pg. 22, 24, 81-82, 88-89. Here, Denis was detained and produced a receipt which showed that he was not in possession of any stolen merchandise. Rather than adhering to the NRI policy and apologizing to Denis and letting him leave, he was arrested without Tran confirming via CCTV that he was not involved in the attempted theft and therefore Denis was maliciously prosecuted for a crime that he did not commit. Moreover, the apprehension report generated by Tran for the subject incident does not indicate that this was an NRI and contains information contrary to what Tran testified to. See Exhibit "A".

For example, the apprehension report, completed by Tran, indicates that Denis was involved in an external theft of merchandise that was concealed in a product box, that he was detected by LP observation, that there is CCTV and photo evidence of the theft, that all items selected by the subjects are the same items concealed in the Glacier Bay box, and that Denis was an accomplice of Herbert Hall. See Exhibit "A"; Exhibit "O" at pg. 18, 23, 45. However, Tran's testimony, plaintiff's testimony, defendant's November 25, 2013 response to plaintiff's October 16, 2013 and October 30, 2013 discovery demands and defendant's April 1, 2014 disclosures contradict this information. Tran testified that he did not maintain continuous observation of Denis and instead continued to observe the man with the vanity cabinet box; that he did not observe Denis take any merchandise outside of the store; that he did not observe Denis having

19

any of the items that he alleged Denis previously put in the box when Denis left the store; that he was trained that stealing was taking merchandise outside of the store and that if merchandise is not taken outside of the store that he was trained that that was not stealing. See Exhibit "Q" at pg. 57-58, 70, 80-81. In defendant's November 25, 2013 response to plaintiff's October 16, 2013 and October 30, 2013 demands defendant responded that it is not in possession of any photographs taken of the plaintiff and that the apprehension report was previously produced. See Exhibit "Y" at ¶ 5-6; Exhibit "Z" at ¶ 3. Defendant's April 1, 2014 letter further indicated that a copy of the Home Depot case file was previously provided to plaintiff and that the case file does not contain any other documents other than the apprehension report. See Exhibit "X". In addition, Home Depot Asset Protection External Policy, Section 17 pertaining to case documentation provides a list of things that constitute case documentation, which includes but is not limited to an apprehension report, CCTV, photographs and receipts. See Exhibit "X". Section 17 makes clear that "[a]ll case documentation must be an accurate representation of the facts surrounding an incident"; to "[i]nclude all case documentation in the case file" and to "[c]omplete the apprehension report prior to the end of your shift on the day the apprehension was made". See Exhibit "X". However, Tran waited approximately twenty hours after the subject incident occurred before completing the apprehension report. See Exhibit "X". As the information was not fresh in his mind when the case documentation was created and the apprehension report contained several inaccuracies, it is mere speculation as to whether its contents are truthful.

This evidence suggests that defendant acted recklessly, wantonly and/or with gross disregard of the rights of the plaintiff where its employee, asset protection manager Tran, recklessly misidentified plaintiff, failed to comply with Home Depot's asset protection policies

and procedures and training, lied to police when he identified plaintiff as a shoplifter, and failed to confirm the identity of plaintiff via review of CCTV footage, which he was authorized to review and admits confirmed that plaintiff was not involved in the attempted theft, and then failed to disclose to the police that the CCTV surveillance video confirmed that Denis was not involved in any sort of theft. Such a showing, if made at trial, would be sufficient to sustain an award of punitive damages against defendant HOME DEPOT where, as here, the resulting false arrest and malicious prosecution resulted in plaintiff's violation of probation and eight month incarceration. See, Nardelli v. Stamberg, 44 N.Y.2d 500 (1978) (Malice necessary to support an action for malicious prosecution also serves to justify an award of punitive damages if defendant acted in reckless disregard of plaintiff's rights).

### C. DEFENDANT'S ASSET PROTECTION MANAGER, HAU TRAN, WAS MANAGERIAL PERSONNEL WITH AUTHORITY TO MAKE A DECISION FOR THE CORPORATION THAT WOULD HAVE PREVENTED THE DAMAGE

Home Depot asset protection manager Tran was important managerial personnel who had the authority to make a decision for the corporation that would have prevented the damage to the plaintiff. See, Doralee Estates, Inc. v. Cities Service Oil Co., 569 F.2d at 722; see also, General Motors Acceptance Corp. v. Forelich, 273 F.2d at 94.

Tran was identified by defendant as an asset protection manager. See Exhibit "X". In addition, he testified that he was not required to get approval from any other manager before calling law enforcement in the performance of his asset protection managerial duties, which include observing external theft. See Exhibit "Q" at pg. 18, 44-45. In addition, Tran was one of three types of employees who had authorization to access the CCTV footage. See Exhibit "X" at SAF 09-10 Security pg. 15. As such, Tran was in a position where his conduct was authorized by the defendant. Moreover, Tran had the authority and duty to access the CCTV footage, after

21

plaintiff was detained, produced a valid receipt for his purchase, was found not to have stolen any merchandise and another THD employee contradicted Tran's identification of plaintiff as the suspected shoplifter, to confirm his suspicions that plaintiff was involved in the attempted theft. If Tran made the decision to view the CCTV footage at that time, which exonerated plaintiff, he could have confirmed that plaintiff did not take any merchandise outside of the store. Such a decision would have resulted in plaintiff's brief detainment. Plaintiff would not have been arrested, maliciously prosecuted, found to have violated of probation or have been incarcerated for eight months. If Tran made the decision to confirm his suspicions by accessing the CCTV footage, he would have prevented the damage to the plaintiff.   See, Peterson v. County of Nassau, 995 F.Supp. 305 (E.D.N.Y. 1998)(Evidence in false arrest action under New York law supported jury's finding lack of probable cause to arrest plaintiffs store customers, transport them to the precinct and hold them there in custody for three hours, despite storeowner's report that plaintiffs were persons depicted in police composite drawings of robbery suspects which gave officers reasonable suspicion to initially detain plaintiffs, officers did not review available wanted posters to assist in their determination of whether plaintiff's were persons depicted thereon).

Accordingly, plaintiff's proposed amendment is not futile as it has evidentiary support for its demand of punitive damages sufficient to withstand a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure.

## POINT III: THE AMENDMENT WILL NOT CAUSE UNDUE DELAY OR PREJUDICE AND WAS NOT MADE IN BAD FAITH

In this case, plaintiff Denis has timely sought the amendment of his complaint.  Plaintiff's delay in moving to amend the complaint was minimal. On April 1, 2014, Defendant disclosed hundreds of pages of additional documents requested by Plaintiff in discovery, four months after

the discovery deadline. Those documents pertained to Home Depot's asset protection policies and procedures and training of Asset Protection Managers, including Hau Tran the Asset Protection Manager who identified Denis as a suspect. After thorough review of those documents and comparison to other training materials provided by defendant on November 25, 2013, plaintiff contacted defendant's counsel on May 6, 2014 to request that defendant consent to plaintiff amending the complaint to include punitive damages. See Exhibit "EE". Defendant's counsel responded on May 13, 2014 and did not consent to stipulate to plaintiff amending the complaint. See Exhibit "FF". As such, the instant motion, made within one month of requesting defendant's consent and three weeks from their refusal to provide same, became necessary. This does not amount to delay that would result in prejudice to defendant.

There is no prejudice to defendant in permitting Denis to amend his complaint. While the parties' fact discovery deadline has since passed due to the defendant's failure to comply with the pretrial order, defendant only recently finished producing all documents that it was required to disclose pursuant to plaintiff's requests for production. Accordingly, plaintiff's motion for leave to amend its complaint should be granted.

### POINT IV: PLAINTIFF HAS GOOD CAUSE FOR LEAVE TO AMEND THE COMPLAINT

To the extent that the Court finds that Plaintiff's motion to amend its complaint is governed by Rule 16 of the Federal Rules of Civil Procedure, which Plaintiff submits it is not, Plaintiff has good cause to request leave to amend the complaint. See, In re Wireless Tel. Servs. Antitrust Litig., 2004 WL 2244502, at *5 (S.D.N.Y. Oct. 6, 2004); Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)(Several circuits have ruled that the Rule 16(b) "good cause" standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings). To show good cause,

23

a movant must demonstrate that it has been diligent. See, Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003); Parker v. Columbia Pictures Indus., 204 F.3d at 340.

Plaintiff has good cause for his failure to comply with the Court's deadline to amend the pleadings as provided in the August 8, 2011 Scheduling Order. The Scheduling Order required a motion to amend the pleadings be made by January 23, 2012. See Exhibit "I". The Scheduling Order also provided that discovery be completed by April 16, 2012 and that the process by which to make a dispositive motion begin by April 30, 2012. See Exhibit "I". Thereafter, the discovery deadline was extended seven times. None of these orders ever addressed the deadline by which to make a motion to amend the pleadings or the deadline by which to make a dispositive motion. As information disclosed in discovery may warrant a party to amend its complaint, plaintiff respectfully submits that it should not be held to the January 23, 2012 deadline by which to make a motion to amend the complaint and that the instant motion is therefore governed by Rule 15(a) of the Federal Rules of Civil Procedure since our office was not served with the defendant's policies and procedures until April 1, 2014.

Therefore, plaintiff was diligent in making the instant motion where said motion is made shortly after defendant disclosed hundreds of pages of additional documents, more than four months after the discovery deadline. The facts that support of Plaintiff's claim for punitive damages were disclosed in discovery which, was supposed to be completed by November 25, 2013, actually concluded on April 1, 2014 when defendant produced hundreds of pages of additional training materials and responses to outstanding demands for discovery. The evidence in which these facts are contained include, but are not limited to, the deposition of the witnesses held on September 19, 2013, October 4, 2013, and October 18, 2013, the Home Depot asset protection policies and procedures and training materials received on the November 25, 2013

24

discovery deadline and additional Home Depot's asset protection policies and procedures and training materials produced on April 1, 2014, apprehension report, the CCTV video footage, criminal complaint, violation of probation report and certificate of disposition. Upon receiving the asset protection training materials defendant served on November 25, 2013, my office wrote several letters to defendant's counsel about the deficiencies of their disclosure, to wit, letters dated December 4, 2013, December 5, 2013 and March 3, 2014. See Exhibits "AA"-"CC". In addition, my associate Ms. Dar Conte brought the defendant's disclosure deficiencies to the attention of Judge Wall at the parties December 9, 2013 conference and reserved plaintiff's right to add these documents to the joint pre-trial order. See Darby Declaration at ¶36. However, it was not until April 1, 2014, four months after the discovery deadline and eight days before the April 9, 2014 conference, that defendant served outstanding discovery. See Exhibit "DD".

As defendant would not consent to plaintiff amending its complaint, the instant motion became necessary and is made within one month after requesting defendant's consent and three weeks after defendant refused to consent to plaintiff amending the complaint.

## CONCLUSION

For the forgoing reasons, plaintiff's motion for leave to amend the complaint should be granted in the interests of justice to add a demand for punitive damages against defendant for its negligence, false arrest and malicious prosecution of plaintiff, which was accomplished with such deliberate indifference and gross disregard for the rights of the plaintiff as to constitute gross and malicious conduct.

Dated:  June 6, 2014
        New York, New York


                                          Regina L. Darby, Esq.

                                                                          25